# In the United States Court of Federal Claims

No. 11-101C

(Filed: January 20, 2012)

*********************************** *
                                    *
AGILITY DEFENSE & GOVERNMENT        *
SERVICES, INC., f/k/a/ TAOS INDUSTRIES,  *
INC.                                *    Subject Matter Jurisdiction;
                                    *    Requirement for Certification of a
                    Plaintiff,      *    CDA Claim; Differences Between
                                    *    Claim and Request for Equitable
v.                                  *    Adjustment; Conversion of REA
                                    *    to Claim; Dismissal Without
THE UNITED STATES,                  *    Prejudice.
                                    *
                    Defendant.      *
                                    *
*********************************** *

*Gary L. Rigney*, Huntsville, Alabama, for Plaintiff.

*Jacob A. Schunk*, with whom were *Tony West*, Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Harold D. Lester, Jr.*, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for Defendant.

### OPINION AND ORDER ON DEFENDANT'S SECOND MOTION
### TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

WHEELER, Judge.

On November 10, 2011, Defendant filed its second motion to dismiss in this case ("Def.'s Mot. II") for lack of subject matter jurisdiction. The Government's primary contention is that Plaintiff, Agility Defense & Government Services, Inc. (hereinafter "Agility") submitted to the procuring contracting officer three "requests for equitable adjustment" but did not file a proper "claim" under the Contract Disputes Act ("CDA"). See (Def.'s Mot. II at 7); see also 41 U.S.C. § 605 (2006) (current version at 41 U.S.C. § 7103). In light of Agility's failure to submit a claim to the contracting officer, the

Government contends that the Court lacks jurisdiction over this CDA case.  See (Def.'s Mot. II at 5, 8).

In response, Agility maintains that its October 26, 2010 request for a final decision was a "claim," containing all but one of the necessary certification requirements.  See (Pl.'s Resp. II at 2-3, Dec. 12, 2011).  Agility contends that at worst, it filed a defective claim, which can be corrected and does not deprive this Court of jurisdiction.  Id. at 2. Agility also contends that because the contracting officer did not notify it of any defect in its certification, and did not issue a final decision within 60 days, the Court should deem Agility's claim denied, thereby authorizing the current action to go forward.  See id.

<u>Background</u>

Agility filed its complaint in this Court on February 17, 2011, seeking compensation for work performed on behalf of the Defense Logistics Agency ("DLA") within the U.S. Department of Defense.  See (Compl. ¶¶ 1-3).  Agility maintains that it had a contract to provide storage, reutilization, and disposal services for the U.S. military in Afghanistan, Kuwait, and Iraq, but that the actual workload "significantly exceeded" the scope of work originally specified by the Government.  Id. ¶¶ 5, 9.  Accordingly, Agility claims that it is entitled to an equitable adjustment of $4,359,071.17 for additional labor and increased work not anticipated under the contract.  Id. ¶ 19.

Before filing suit in this Court, Agility attempted to obtain payment by submitting a "Request for Equitable Adjustment" to Karen Hammontree, the procuring contracting officer at DLA, on September 1, 2009.  See (Def.'s Mot. II, Ex. A).  Ms. Hammontree responded with a letter dated February 16, 2010.  See id. Ex. D.  She characterized the letter as "the final decision of the Contracting Officer"; however, within the letter, she presented four requests or questions to Agility, seeking further information regarding Agility's request for equitable adjustment.  Id.

For unexplained reasons, Agility maintains that it did not receive Ms. Hammontree's February 16, 2010 letter until August 12, 2010.  (Pl.'s Resp. I at 1.)  In the meantime, Agility submitted to DLA a second "Request for Equitable Adjustment" in the amount of $4,359,071.79 on August 3, 2010.  (Def.'s Mot. II, Ex. C.)  After Agility received Ms. Hammontree's February 16, 2010 letter, it sent a follow-up letter on October 26, 2010, requesting the contracting officer's final decision on the letter it had submitted on August 3, 2010.  Id. Ex. E.  In both the August 3 and October 26, 2010 letters, the Vice President of Agility certified that "[p]ursuant to DFAR 252.243-7002 Requests for Equitable Adjustment . . . this request is made in good faith and that the support data are accurate and complete to the best of my knowledge and belief."  Id. Exs. C, E.  DLA apparently did not respond further to Agility's letters, and this action followed.

On June 17, 2011, Defendant filed a motion to dismiss ("Def.'s Mot. I"), contending that Plaintiff had failed to submit a certified claim in accordance with 41 U.S.C. § 7103. In an order dated June 24, 2011, the Court denied the Government's motion to dismiss without prejudice, noting that the Government could re-file if, upon a fuller record, the Government believed that a further basis existed to challenge the Court's jurisdiction. Order at 3. On November 10, 2011, the Government filed its second motion to dismiss, re-stating its position that the Court lacks subject matter jurisdiction because Agility has failed to submit a "claim" meeting the requirements of 41 U.S.C. § 7103(a)-(b). Agility filed a response to the Government's motion on December 12, 2011, and the Government filed a reply on December 21, 2011. The Court deems oral argument unnecessary, and the motion is ready for decision.

## Discussion

This Court has "jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under" the CDA. 28 U.S.C. § 1491(a)(2); see also 41 U.S.C. §§ 601-13 (2006) (current version at 41 U.S.C. §§ 7101-09). Before resorting to the Court, however, the CDA requires a contractor to exhaust its administrative remedies by submitting a "claim" to, and receiving a final decision from, the contracting officer. 41 U.S.C. § 7103(a). In addition, where a contractor seeks a remedy of more than $100,000, it must certify that: "(A) the claim is made in good faith; (B) the supporting data are accurate and complete to the best of the contractor's knowledge and belief; (C) the amount requested accurately reflects the contract adjustment for which the contractor believes the Federal Government is liable; and (D) the certifier is authorized to certify the claim on behalf of the contractor." Id. § 7103(b).

As with a "claim" under the CDA, a contractor submitting a request for equitable adjustment ("REA") to a Department of Defense entity also must meet a certification requirement, albeit a less demanding one. Pursuant to 10 U.S.C. § 2410, a contractor requesting an equitable adjustment that exceeds the simplified acquisition threshold[1] must certify that: "(1) the request is made in good faith; and (2) the supporting data are accurate and complete to the best of [the certifier's] knowledge and belief." § 2410(a)(1)-(2). In other words, a contractor submitting an REA must make only two of the four certifications required for the submission of a claim under the CDA. "If a contractor has certified a[n] [REA] in accordance with 10 U.S.C. § 2410(a), and desires to convert the request to a claim under the [CDA]," the contractor must certify the claim in accordance with FAR 33.207, which requires the contractor to meet the four certification requirements for submitting a claim over $100,000 under the CDA. 48 CFR 243.204-71(c).

---

[1] For purposes of ease and efficiency, purchases below a certain threshold are permitted to use simplified acquisition procedures. The current simplified acquisition threshold is $100,000. 41 U.S.C. § 134 (2006).

Here, Agility concedes that it "inadvertently failed to include the certification required by 41 U.S.C. § 7103(b)(1)" in its September 1, 2009 REA. (Pl.'s Resp. II at 1.) In light of that failure, Agility takes the position that its initial claim was invalid and therefore, so was the "final decision" allegedly rendered by Ms. Hammontree on February 16, 2010. See id. at 2. Nevertheless, Agility maintains that this Court has jurisdiction because its October 26, 2010 request contained a certification meeting *nearly* all the requirements of 41 U.S.C. § 7103(b)(3). See id. (emphasis added). Agility maintains that its claim at most was defective and therefore, pursuant to 41 U.S.C. § 7103(b)(3), may be corrected prior to the entry of a final judgment. Id.

This Court has long held that a proper certification under the CDA is a jurisdictional prerequisite. J & E Salvage Co. v. United States, 37 Fed. Cl. 256, 263 (1997) (citing United States v. Grumman Aerospace Corp., 927 F.2d 575, 579 (Fed. Cir. 1991)). In 1992, however, Congress amended the CDA to provide that "a defect in the certification does not deprive a court . . . of jurisdiction over the claim." 41 U.S.C. § 605(c)(6) (2006) (current version at 41 U.S.C. § 7103(b)(3)). Instead, § 7103(b)(3) gives a contractor an opportunity to cure its defective certification while the Court retains jurisdiction. Id. By allowing contractors to cure defective certifications, Congress sought "'to avoid repetition of the entire administrative process'" where the defect resulted from an "innocent mistake." Hamza v. United States, 31 Fed. Cl. 315, 323 (1994) (quoting H.R. Rep. No. 102-1006, reprinted in 1992 U.S.C.C.A.N., 3921, 3937).

Agility attempts to characterize its October 26, 2010 request as a defective CDA claim that it can correct pursuant to § 7103(b)(3). The Court, however, views Agility's submission not as a defective CDA claim, but as a properly-certified REA. In both its August 3 and October 26, 2010 letters, Agility refers to its submission as a "Request for Equitable Adjustment," (Def.'s Mot. II, Exs. C, E), and Agility's October 26, 2010 letter contains the proper certification for an REA, id. Ex. E. In its October 26 letter, Agility even states that it is certifying its REA "[p]ursuant to DFAR 252.243-7002"—the DFARS provision that sets forth the certification requirements for an REA. Lastly, it is significant that Agility did not merely omit two of the four certification requirements for a CDA claim; it specifically omitted the two requirements that differentiate the certification of an REA from the certification of a CDA claim.

The DFARS provision notes that the certification required for an REA "is different from" the certification required for a CDA claim. DFARS 243.204-71(c). Moreover, the DFARS prescribes a specific process that a contractor must follow if it wishes to convert a properly certified REA into a claim under the CDA: "the contractor shall certify the claim in accordance with FAR Subpart 33.2." Id. In other words, the contractor's submission must include the four statements required for a properly-certified CDA claim. In light of the DFARS' differentiation between an REA and a CDA claim, as well as the DFARS' prescription for converting an REA into a CDA claim, the Court cannot say that Agility's October 26, 2010 request is merely a defective claim that Agility can correct.

Instead, it is an REA that must be converted into a CDA claim by making the proper certifications.

For the above reasons, the Court finds that it does not have jurisdiction to adjudicate Agility's complaint.  The Court makes this ruling with some reluctance, given the contracting officer's contribution to a confused set of circumstances.  It is not clear to the Court why Agility did not receive Ms. Hammontree's February 16, 2010 letter for nearly six months.   Moreover, Ms. Hammontree confused the matter further by characterizing her February 16 letter as "the final decision of the Contracting Officer," while also seeking additional information from Agility in the same letter.  (Def.'s Mot. II Ex. D.)  Because of the delay already occasioned by these missteps, the Court expects the DLA to act promptly to adjudicate any further submissions from Agility.

<u>Conclusion</u>

Based upon the foregoing, Defendant's motion to dismiss is GRANTED. Agility's complaint is DISMISSED without prejudice and with the suggestion that Agility submit a properly-certified claim to the contracting officer for final decision.  In the event Agility re-files its action in this Court, Agility shall indicate that the case is related to this case, No. 11-101C, and that the new case should be assigned to the undersigned Judge.   Pursuant to Rule 40.2 of the Court, Agility shall file a separate Notice of Directly Related Case at the time of filing the complaint in the new case.

IT IS SO ORDERED.

s/Thomas C. Wheeler
THOMAS C. WHEELER
Judge